1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BILLY LOUIS BOOKER,

11            Petitioner,            No. 2:11-cv-0050 KJM DAD P

12       vs.

13   GARY SWARTHOUT,

14            Respondent.          FINDINGS AND RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner is serving a sentence of eighteen years to life in

18   state prison following his 1980 conviction in the San Francisco County Superior Court for

19   second degree murder with the use of a deadly weapon.

20            In his pending federal habeas petition, petitioner challenges a December 18, 2008

21   decision by the California Board of Parole Hearings (Board) finding him unsuitable for parole

22   and deferring his next parole consideration hearing for three years.  This matter is before the

23   court on respondent's motion to dismiss the petition pursuant to Rule 4 of the Rules Governing

24   Section 2254 Cases in the United States District Courts (hereinafter "Habeas Rules").  Petitioner

25   has opposed respondent's motion.

26   /////

1    Rule 4 of the Habeas Rules requires the court to summarily dismiss a habeas

2    petition "[i]f it plainly appears from the petition and any exhibits annexed to it that the petitioner

3    is not entitled to relief in the district court."   A motion for summary dismissal pursuant to Rule 4

4    of the Habeas Rules is an appropriate motion in habeas proceedings.   See O'Bremski v. Maass,

5    915 F.2d 418, 420 (9th Cir. 1990).

6    I. Petitioner's Claims

7        A.  Due Process

8        In his first claim for relief, petitioner contends that the Board's 2008 decision to

9    deny him parole for a period of three years violated his federal constitutional right to due process

10   of law because:  the Board relied unfairly on the unchanging circumstance of his commitment

11   offense and other pre-offense factors to deny him parole; the Board's decision denying release on

12   parole was arbitrary and capricious; and there was insufficient evidence in the record before the

13   Board that petitioner would pose a current danger to society if released from prison.  (Pet. (Doc.

14   No. 1), at 17-19, 29-46, 49-52.)  Petitioner also argues that the San Francisco County Superior

15   Court's denial of his state habeas petition, in which he raised this due process claim, was

16   erroneous and violated both California and federal law.  (Id.)

17       Respondent counters by arguing that petitioner's due process claim is not

18   cognizable in this federal habeas corpus proceeding and should therefore be dismissed.  (Mot. to

19   Dismiss (Doc. No. 15) at 2, 3-4.)

20       The Due Process Clause of the Fourteenth Amendment prohibits state action that

21   deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

22   due process violation must first demonstrate that he was deprived of a liberty or property interest

23   protected by the Due Process Clause and then show that the procedures attendant upon the

24   deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

25   490 U.S. 454, 459-60 (1989).

26   /////

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). However, a state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release will be granted" when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest. Greenholtz, 442 U.S. at 12. See also Allen, 482 U.S. at 376-78.

California's parole scheme gives rise to a liberty interest in parole protected by the federal Due Process Clause. Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Swarthout v. Cooke, 562 U.S. ___ , ___, 131 S. Ct. 859, 861-62 (2011) (finding the Ninth Circuit's holding in this regard to be a reasonable application of Supreme Court authority); Pearson v. Muntz, 639 F.3d 1185, 1191 (9th Cir. 2011) ("[Swarthout v.] Cooke did not disturb our precedent that California law creates a liberty interest in parole.") In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness. In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).

In Cooke, the Supreme Court reviewed two cases in which California prisoners were denied parole - in one case by the Board, and in the other by the Governor after the Board had granted parole. Cooke, 131 S. Ct. at 860-61. The Supreme Court noted that when state law creates a liberty interest, the Due Process Clause of the Fourteenth Amendment requires fair procedures, "and federal courts will review the application of those constitutionally required procedures." Id. at 862. The Court concluded that in the parole context, however, "the

1   procedures required are minimal" and that the "Constitution does not require more" than "an

2   opportunity to be heard" and being "provided a statement of the reasons why parole was denied."

3   Id. (citing Greenholtz, 442 U.S. at 16).  The Supreme Court therefore rejected Ninth Circuit

4   decisions that went beyond these minimal procedural requirements and "reviewed the state

5   courts' decisions on the merits and concluded that they had unreasonably determined the facts in

6   light of the evidence."  Cooke, 131 S. Ct. at 862.  In particular, the Supreme Court rejected the

7   application of the "some evidence" standard to parole decisions by the California courts as a

8   component of the federal due process standard.  Id. at 862-63.  See also Pearson, 639 F.3d at

9   1191.[1]

10          In his opposition to respondent's motion to dismiss, petitioner argues that he "did

11   not receive that minimal amount of due process at the parole suitability hearing because he was

12   not allowed to speak at the hearing to contest evidence and records against him, and was not

13   afforded access to records used in advanced [sic] of the hearing, and thereby was not provided

14   are [sic] notified as to the reasons why he was denied parole in their absence."  (Traverse (Doc.

15   No. 17) at 6.)  However, it is plain from the record in this case that petitioner was present at his

16   2008 parole consideration hearing, that he participated in that hearing, and that he was provided

17   with the reasons for the Board's decision to deny him parole.  (Doc. No. 1 at 69-143; Doc. No. 1-

18   1 at 1-8.)  According to the United States Supreme Court, the federal due process clause requires

19   no more.  Specifically, there is no requirement that a prisoner be afforded access to records used

20   by the Board, or the reasons for a denial of parole, in advance of a parole suitability hearing.

21   /////

22

23          [1]  In its per curiam opinion the Supreme Court did not acknowledge that for twenty-four
     years the Ninth Circuit had consistently held that in order to comport with due process a state
24   parole board's decision to deny parole had to be supported by "some evidence," as defined in
     Superintendent v. Hill, 472 U.S. 445 (1985), that bore some indicia of reliability.  See Jancsek v.
25   Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); McQuillion v. Duncan, 306 F.3d
     895, 904 (9th Cir. 2002) ("In Jancsek . . . we held that the process that is due in the parole
26   rescission setting is the same as the Supreme Court outlined in Superintendent v. Hill . . . .")

4

1   Accordingly, petitioner is not entitled to federal habeas relief with respect to his due process

2   claim.

3       B.  Ex Post Facto Violation

4           Petitioner's next claim for federal habeas relief is based upon his argument that

5   application of the provisions of California Proposition 9, also known as Marsy's Law, at his 2008

6   parole hearing violated the Ex Post Facto Clause of the United States Constitution because it

7   increased the deferral period for his next parole suitability hearing and resulted in his serving a

8   longer prison sentence.  (Pet. (Doc. No. 1) at 19, 55-58.)

9           In moving to dismiss the pending petition, respondent argues that petitioner's Ex

10  Post Facto claim is not cognizable in this habeas corpus proceeding because success on the claim

11  would not necessarily shorten petitioner's time in prison.  (Mot. to Dismiss at 4.)  Respondent

12  also argues that the claim should be dismissed because it presents the same issue that is pending

13  before this court in the class action case of Gilman v. Fisher, Civil Case No. 05-0830 LKK GGH

14  P (E.D. Cal.).  (Id. at 5.)

15          The Constitution provides that "No State shall . . . pass any . . . ex post facto

16  Law."  U.S. Const. art. I, § 10.  A law violates the Ex Post Facto Clause of the United States

17  Constitution if it:  (1) punishes as criminal an act that was not criminal when it was committed;

18  (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a

19  person of a defense available at the time the crime was committed.  Collins v. Youngblood, 497

20  U.S. 37, 52 (1990).  The Ex Post Facto Clause "is aimed at laws that retroactively alter the

21  definition of crimes or increase the punishment for criminal acts."  Himes v. Thompson, 336

22  F.3d 848, 854 (9th Cir. 2003) (quoting Souch v. Schaivo, 289 F.3d 616, 620 (9th Cir. 2002)).

23  See also Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995).  The Ex Post Facto Clause is

24  also violated if:  (1) state regulations have been applied retroactively; and (2) the new regulations

25  have created a "sufficient risk" of increasing the punishment attached to the crimes.  Himes, 336

26  F.3d at 854.  The retroactive application of a change in state parole procedures violates ex post

5

1   facto only if there exists a "significant risk" that such application will increase the punishment

2   for the crime.  See Garner v. Jones, 529 U.S. 244, 259 (2000).

3         Petitioner was convicted and sentenced to eighteen years to life in state prison

4   with the possibility of parole in 1980, twenty-eight years prior to the passage of Marsy's Law in

5   November 2008.  Marsy's Law amended California law governing parole hearing deferral

6   periods.  See Gilman v. Davis, 690 F. Supp.2d 1105, 1109–13 (E.D. Cal. 2010) (granting

7   plaintiffs' motion for a preliminary injunction enjoining enforcement of Marsy's Law, to the

8   extent it amended former California Penal Code § 3041.5(b)(2)(A)), rev'd sub nom. Gilman v.

9   Schwarzenegger, 638 F.3d 1101 (9th Cir. 2011).  Prior to the enactment of Marsy's Law, the

10  Board deferred subsequent parole suitability hearings with respect to indeterminately-sentenced

11  inmates for one year unless the Board determined it was unreasonable to expect that parole could

12  be granted the following year.  If that determination was made, the Board could then defer the

13  inmate's subsequent parole suitability hearing for up to five years.  See Cal. Pen. Code §

14  3041.5(b)(2) (2008).  Marsy's Law, which applied to petitioner at the time of his 2009 parole

15  suitability hearing, amended § 3041.5(b)(2) to impose a minimum deferral period for subsequent

16  parole suitability hearings of three years, and to authorize the Board's deferral of a subsequent

17  parole hearing for up to seven, ten, or fifteen years.  Id. § 3041.5(b)(3) (2010).

18        One of the claims presented by the plaintiffs in the class action Gilman case

19  pending in this U.S. District Court is that the amendments to § 3041.5(b)(2) regarding parole

20  deferral periods imposed under Marsy's Law violates the Ex Post Facto Clause because "when

21  applied retroactively, [they] create a significant risk of increasing the measure of punishment

22  attached to the original crime."  (Gilman, Doc. No. 154–1 at 13 (Fourth Amended/Supplemental

23  Complaint), Doc. No. 183 (Mar. 4, 2009 Order granting plaintiffs' motion for leave to file a

24  Fourth Amended/Supplemental Complaint.))  With respect to this Ex Post Facto claim, the class

25  in Gilman is comprised of "all California state prisoners who have been sentenced to a life term

26  with possibility of parole for an offense that occurred before November 4, 2008."  (Gilman, Doc.

6

No. 340 (Apr. 25, 2011 Order amending definition of class.))  The <u>Gilman</u> plaintiffs seek

declaratory and injunctive relief, including a permanent injunction enjoining the Board from

enforcing the amendments to § 3041.5(b) enacted by Marsy's Law and requiring that the Board

conduct a new parole consideration hearing for each member of the class.  (<u>Gilman</u>, Doc. No.

154–1 (Fourth Amended/Supplemental Complaint) at 14.)

   In a class action for injunctive relief certified under Rule 23(b)(2) of the Federal

Rules of Civil Procedure a court may, but is not required to, permit members to opt-out of the

suit.  <u>Crawford v. Honig</u>, 37 F.3d 485, 487 n.2 (9th Cir. 1994).  In certifying the <u>Gilman</u> class,

the district court found that the plaintiffs satisfied the requirement of Rules 23(a) and 23(b)(2)

that "the party opposing the class has acted or refused to act on grounds that apply generally to

the class, so that final injunctive relief or corresponding declaratory relief is appropriate

respecting the class as a whole."  (<u>See</u> <u>Gilman</u>, Doc. No. 182 (Mar. 4, 2009 Order certifying class

pursuant to Fed. R. Civ. P. 23(b)(2), Doc. No. 257 (June 3, 2010 Ninth Circuit Court of Appeals

Memorandum affirming district court's order certifying class.))  According to the district court in

<u>Gilman</u>, the members of the class "may not maintain a separate, individual suit for equitable

relief involving the same subject matter of the class action."  (<u>Gilman</u>, Doc. No. 296 (Dec.10,

2010 Order) at 2; <u>see also</u> Doc. No. 278 (Oct. 1, 2010 Order), Doc. No. 276 (Sept. 28, 2010

Order), Doc. No. 274 (Sept. 23, 2010 Order.))  There is no evidence before the court at this time

in this habeas action suggesting that petitioner has requested permission to opt out of the <u>Gilman</u>

class action lawsuit.

   Rather, herein petitioner alleges he is a California state prisoner who was

sentenced to a life term in state prison with the possibility of parole for an offense that occurred

before November 4, 2008.  (Doc. No. 1 at 1.)  Accepting petitioner's allegations as true, he is a

member of the <u>Gilman</u> class.  Similar to the plaintiffs in <u>Gilman</u>, petitioner in this habeas action

alleges that Marsy's Law violates the Ex Post Facto Clause because, when applied retroactively,

it creates a risk of increasing the length of his punishment.  Petitioner asks the court to issue a

1   writ of habeas corpus.  However, even if the court found that the Board's 2008 three-year

2   deferral of petitioner's next parole suitability hearing violated the Ex Post Facto Clause, it would

3   not entitle petitioner to release on parole.  Because his Ex Post Facto claim concerns only the

4   timing of petitioner's next parole suitability hearing, success on that claim would not necessarily

5   result in determinations that petitioner is suitable for release from custody on parole.  Rather,

6   petitioner's equitable relief would be limited to an order directing the Board to conduct a new

7   parole suitability hearing and enjoining the Board from enforcing against petitioner any

8   provisions of Marsy's Law found to be unconstitutional.  This is the same relief petitioner would

9   be entitled to as a member of the pending <u>Gilman</u> class action.  (<u>See</u> <u>Gilman</u>, Doc. No. 154–1

10   (Fourth Amended/Supplemental Complaint) at 14.)

11          Therefore, it appears clear that petitioner's rights will be fully protected by his

12   participation as a class member in the <u>Gilman</u> case.  Accordingly, the court recommends that

13   petitioner's Ex Post Facto claim presented by him in this federal habeas action be dismissed

14   without prejudice to any relief that may be available to him as a member of the <u>Gilman</u> class.

15   <u>See</u> <u>Crawford v. Bell</u>, 599 F.2d 890, 892 (9th Cir. 1979) ("A court may choose not to exercise its

16   jurisdiction when another court having jurisdiction over the same matter has entertained it and

17   can achieve the same result."); <u>see</u> <u>also</u> <u>McNeil v. Guthrie</u>, 945 F.2d 1163, 1165 (10th Cir. 1991)

18   ("Individual suits for injunctive and equitable relief from alleged unconstitutional prison

19   conditions cannot be brought where there is an existing class action."); <u>Gillespie v. Crawford</u>,

20   858 F.2d 1101, 1103 (5th Cir.1988) ("To allow individual suits would interfere with the orderly

21   administration of the class action and risk inconsistent adjudications."); <u>Johnson v. Parole Board</u>,

22   No. CV 12–3756–GHK (CW), 2012 WL 3104867, at * (C.D. Cal. June 26, 2012)

23   (recommending dismissal of petitioner's Ex Post Facto challenge to Proposition 9 "without

24   /////

25   /////

26   /////

1   prejudice in light of the ongoing <u>Gilman</u> class action.") (and cases cited therein), <u>report</u> and

2   <u>recommendation</u> <u>adopted by</u> 2012 WL 3104863 (C.D. Cal. July 25, 2012).[2]

3       C.   <u>Impartiality of the Board</u>

4           Petitioner also claims that the Board is "now an advocate for 'victims' rights' and

5   not an impartial adjudicator." (Pet. (Doc. No. 1) at 52.)  He notes that Proposition 9's "Statement

6   of Purposes and Intent" states that Marsy's Law is intended to "invoke the rights of families of

7   homicide victims to be spared the ordeal of prolonged and unnecessary suffering, and to stop the

8   waste of millions of taxpayer dollars, by eliminating parole hearings in which there is no

9   likelihood a murderer will be paroled." (<u>Id.</u>)  Petitioner argues that "by statute and constitutional

10  amendment, the Board of Parole Hearings is now an advocate for victims' rights, thereby a

11  biased adjudicator." (<u>Id.</u> at 54.)

12          The Ninth Circuit Court of Appeals has acknowledged that California inmates

13  have a due process right to parole consideration by neutral decision-makers.  <u>See</u> <u>O'Bremski</u>, 915

14  F.2d at 422 (an inmate is "entitled to have his release date considered by a Board that [is] free

15  from bias or prejudice").  Accordingly, parole board officials owe a duty to potential parolees "to

16  render impartial decisions in cases and controversies that excite strong feelings because the

17  litigant's liberty is at stake."  <u>Id.</u> (quoting <u>Sellars v. Procunier</u>, 641 F.2d 1295, 1303 (9th Cir.

18  1981)).  Indeed, "a fair trial in a fair tribunal is a basic requirement of due process."  <u>In re</u>

19  <u>Murchison</u>, 349 U.S. 133, 136 (1955).  Petitioner is therefore correct when he says that he was

20  entitled to have his parole release date considered by a Board that was free of bias or prejudice.

21  However, the mere fact that Marsy's Law seeks to eliminate parole hearings for those prisoners

22  who have no likelihood of being paroled within three years in order to save tax dollars and spare

23

24          [2] In light of the recommended dismissal of this action on the grounds that petitioner's Ex
    Post Facto claim has been presented by the plaintiff class of which he is a member and is being
    entertained in the <u>Gilman</u> case pending before this court, the undersigned will not reach
25  respondent's argument that petitioner's Ex Post Facto claim is not cognizable in this federal
    habeas corpus proceeding because success on that claim would not necessarily shorten
26  petitioner's time in prison.

1  the victims' families further suffering does not support a claim that any particular Board panel or

2  Board member is impartial or biased.  Petitioner does not allege that any member of the Board at

3  his 2008 hearing was biased or impartial nor does he present any evidence suggesting such a

4  contention.  Accordingly, he is not entitled to federal habeas relief with respect to claim that he

5  was denied parole in 2008 by an impartial and biased Board.

6       D.  Bill of Attainder

7            Petitioner's final claim is that Marsy's Law constitutes an unlawful Bill of

8  Attainder.  (Pet. (Doc. No. 1) at 58-59.)  In this regard, he argues that:

9            Proposition 9 places a more onerous presumption of unsuitability
             on a prisoner, and then deprives him/her of another hearing for a
10           increased 15 years without any conviction in the ordinary course of
             judicial proceedings.  Accordingly, Proposition 9's purpose clearly
11           reflects that it singles out a disfavored group (prisoners) in order to
             mete out summary punishment, therefore it is a Bill of Attainder.

12

13  (Id. at 59.)

14            The United States Constitution provides that "No Bill of Attainder . . . shall be

15  passed."  U.S. Const. art. 1, §9, cl. 3.  A bill of attainder involves a statute imposing punishment

16  without the benefit of trial.  Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 468 (1977).

17  Three requirements must be met to establish a violation of the Bill of Attainder Clause:  it must

18  single out an identifiable group, inflict punishment, and dispense with a judicial trial.  Id.;

19  Selective Serv. Sys. v. Minnesota Pub. Interest Research Group, 468 U.S. 841, 846-47 (1984).

20  Three inquiries determine whether a statute "inflicts punishment:"  (1) whether the challenged

21  statute falls within the historical meaning of legislative punishment; (2) whether the statute,

22  "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further

23  nonpunitive legislative purposes;" and (3) whether the legislative record "evinces a congressional

24  intent to punish."  United States v. Lujan, 504 F.3d 1003, 1006 (9th Cir. 2007) (quoting Selective

25  Serv. Sys., 468 U.S. at 852).

26  /////

10

1    Given these requirements and relevant factors for consideration, Marsy's Law
2    does not qualify as a bill of attainder.  Petitioner has not alleged any facts which could establish
3    he is subject to a bill of attainder, nor has he cited any decision of the United States Supreme
4    Court supporting his claim that Proposition 9 constitutes additional "punishment" for his crime.
5    As noted by respondent, Marsy's Law has no effect on the indeterminate life sentence petitioner
6    received after his conviction for second degree murder.  His sentence remains the same
7    regardless of when his future parole suitability hearings are held.  For these reasons, petitioner is
8    not entitled to federal habeas relief with respect to his claim that Marsy's Law constitutes an
9    unlawful Bill of Attainder.

10                                    CONCLUSION

11    In accordance with the above, IT IS HEREBY RECOMMENDED that:

12    1.  Respondents' September 12, 2011 motion to dismiss (Doc. No. 15) be granted;

13    2.  Federal habeas relief be denied as to petitioner's due process claim, his claim

14    that Marcy's Law constitutes a Bill of Attainder, and his claim that he was denied parole in 2008

15    by impartial decisionmakers; and

16    3.  Petitioner's claim that his rights under the Ex Post Facto Clause were violated

17    by the Board's 2008 decision to defer his next parole consideration for a period of three years be

18    dismissed without prejudice to any relief that may be available to petitioner as a member of the

19    class in Gilman v. Fisher, 05–0830 LKK GGH P (E.D. Cal.).

20    These findings and recommendations will be submitted to the United States

21    District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

22    fourteen days after being served with these findings and recommendations, any party may file

23    written objections with the court.  The document should be captioned "Objections to Findings

24    and Recommendations."  Any reply to the objections shall be served and filed within fourteen

25    days after service of the objections.  Failure to file objections within the specified time may

26    waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

11

1  Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may

2  address whether a certificate of appealability should issue in the event he files an appeal of the

3  judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (the district

4  court must issue or deny a certificate of appealability when it enters a final order adverse to the

5  applicant).

6  DATED: September 19, 2012.

7

8  _____

9  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

10  DAD:8:
    booker50.mtd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26